821 A.2d 110 (2003)
359 N.J. Super. 573
STATE of New Jersey, Plaintiff-Respondent,
v.
Vicki NIKOLA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 20, 2003.
Decided April 29, 2003.
*112 O'Donnell & Dumbroff, attorneys for appellant (David H. Dumbroff, on the brief).
Dolores M. Blackburn, Sussex County Prosecutor, attorney for respondent (Francis A. Koch, Assistant Sussex County Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*111 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The question presented by this appeal is whether a police officer who has temporarily detained a motorist outside her garage, based on probable cause to believe she has been driving while under the influence of alcohol, may follow the motorist into her garage while she retrieves her driving credentials and then arrest her without a warrant.
Defendant was charged in the Sparta Municipal Court with driving while under the influence of alcohol, in violation of N.J.S.A. 39:4-50, and refusal to submit to a breathalyzer test, in violation of N.J.S.A. 39:4-50.4a.[1] Defendant filed a motion to suppress the evidence upon which the charges were based.
At a municipal court hearing on the motion, Edward Walsh, another motorist, testified that around 1 a.m. on December 13, 2000, he observed defendant driving her car in the opposite direction in his lane. Walsh flashed his high beams but she kept coming towards him. After Walsh pulled his car onto the shoulder to avoid a head-on collision, defendant brought her car to a stop a car length away, then drove past him. Walsh turned his car around and started following defendant. During the next few minutes, Walsh observed defendant bounce off curbs twice and almost hit another car. Walsh wrote down the make and license plate number of defendant's car and called the police to report what he had seen. Walsh followed defendant all the way to her house and showed the police the driveway her car had entered.
Officer John Hanrahan and other members of the Sparta Police Department arrived at defendant's house less than a minute after she pulled into her driveway. Hanrahan parked his car in front of the house and walked down the driveway. As he approached, Hanrahan saw defendant standing at the entrance to her garage with the garage door open. Defendant said to Hanrahan in an antagonistic tone, "what's this, a raid?" Hanrahan told her the police had received a report she had almost hit another car head-on. Defendant denied being on the road where the reported incident occurred, but admitted she had been driving the car.
While defendant was speaking, Hanrahan was able to smell the odor of alcohol emanating from her breath. He also observed that her eyes were bloodshot and watery. Hanrahan asked defendant whether she had been drinking, and defendant replied that "she had two drinks earlier that evening." Hanrahan then asked defendant to recite the alphabet, but she was unable to do it correctly on either of two attempts. Until this time, Hanrahan remained outside defendant's garage.
*113 After defendant failed to recite the alphabet correctly, Hanrahan asked for her driving credentials. Defendant walked to her car inside the garage to retrieve those documents, and Hanrahan followed her. Hanrahan observed that defendant was unsteady on her feet when she walked. She also had difficulty getting her license out of her purse and her other driving credentials out of the glove compartment of the car. Hanrahan attempted to administer additional field sobriety tests to defendant, but she was unable to do them properly. When defendant almost fell down, Hanrahan discontinued the tests and placed defendant under arrest. After defendant was brought to the Sparta Police Department, she refused to take a breathalyzer test.
Defendant's husband, Richard Nikola, who entered the garage from the house around the time defendant was retrieving her driving credentials, testified on her behalf. His testimony conflicted with Hanrahan's testimony concerning some of the details of what occurred after Hanrahan entered the garage. Defendant did not testify.
The municipal court judge concluded that Officer Hanrahan did not have probable cause to believe defendant had been driving while under the influence before entering her garage and therefore the warrantless entry into the garage and defendant's subsequent arrest violated her rights under the Fourth Amendment to the United States Constitution and Article I, paragraph 7, of the New Jersey Constitution.
The State appealed the grant of defendant's motion to suppress to the Law Division. The Law Division determined that all evidence obtained before Officer Hanrahan entered defendant's garage, including Walsh's observations of her erratic operation of her car and Hanrahan's observations of her from outside the garage, would be admissible at trial. However, the court affirmed the suppression of the additional evidence of defendant's intoxicated condition after Hanrahan entered the garage. The Law Division also determined that Hanrahan had probable cause to arrest defendant before he entered the garage. The court did not specifically decide whether the warrantless arrest of defendant was invalid or what the consequences would be if the arrest were invalid. Defendant filed a motion for reconsideration, which the Law Division denied.
After the remand to the municipal court, defendant entered into a plea bargain, under which the State agreed to dismiss the charge of driving while under the influence and defendant agreed to plead guilty to the charge of refusing to submit to a breathalyzer test, conditioned on defendant's right to appeal the Law Division's decision on her motion to suppress. The court accepted the plea, and suspended defendant's motor vehicle license for six months and imposed a $300 fine.
Defendant argues that Officer Hanrahan did not have probable cause to believe she had been operating her car while under the influence of alcohol before entering her garage. Defendant also argues that even if Officer Hanrahan had probable cause to arrest her, the warrantless entry into her garage violated her rights under the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution, and the State therefore cannot prosecute her for refusing to submit to a breathalyzer test after her warrantless arrest.
We conclude that Officer Hanrahan had probable cause to believe defendant had been driving while under the influence, that he temporarily detained her before entering the garage, and that he did not have to obtain a warrant before following her into her garage to retrieve her driving *114 credentials and then arresting her. Therefore, we affirm defendant's conviction for refusing to submit to a breathalyzer test.

I
Before considering the validity of defendant's arrest, it is necessary to discuss the procedural route by which this appeal has been brought before us. After the municipal court granted defendant's motion to suppress, the state took an interlocutory appeal to the Law Division pursuant to Rule 3:24. The Law Division reversed the suppression of the evidence obtained by the State before Officer Hanrahan's entry into defendant's garage and concluded that this evidence established probable cause for defendant's arrest. It also affirmed the part of the order entered by the municipal court which suppressed the evidence obtained after Officer Hanrahan entered defendant's garage.
However, the Law Division did not explicitly rule on the validity of defendant's warrantless arrest in the garage or whether that warrantless arrest precluded the State from prosecuting her for refusing to submit to a breathalyzer test. In fact, the order entered by the court stated: "This Court is expressly not ruling on the admissibility of any other evidence." The "other evidence" to which the court referred apparently included evidence of defendant's refusal to submit to the breathalyzer test.
Upon the remand from the Law Division, defendant pled guilty in municipal court to a refusal to submit to a breathalyzer test pursuant to a plea bargain which preserved her right to appeal the Law Division decision. At this point, defendant should have appealed her conviction to the Law Division pursuant to Rule 3:23 and sought rulings by that court on the issues it had declined to reach on defendant's interlocutory appeal. But instead, defendant appealed directly to this court.
The question thus raised is whether we should now remand the case to the Law Division. If there were a need for presentation of additional evidence, a remand obviously would be required. However, a complete record concerning the circumstances of defendant's arrest was developed in the initial hearing in municipal court and that court made the factual findings essential to a determination of the legal issues presented by this appeal. Therefore, we have determined to decide the appeal on the merits by granting leave to appeal pursuant to Rule 2:2-3(b) rather than remanding to the Law Division. See State v. Fulford, 349 N.J.Super. 183, 189, 793 A.2d 112 (App.Div.2002).

II
We first consider whether Officer Hanrahan had probable cause to believe defendant had been driving while under the influence before entering her garage and then whether he was required to obtain an arrest warrant before making that entry.

A
"Probable cause exists if at the time of the police action there is `a "well grounded" suspicion that a crime has been or is being committed.'" State v. Sullivan, 169 N.J. 204, 211, 777 A.2d 60 (2001) (quoting State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972)). The concept of probable cause "includes a conscious balance of the governmental need for enforcement of the criminal law against the citizens' constitutionally protected right of privacy." Ibid. (quoting State v. Kasabucki, 52 N.J. 110, 116, 244 A.2d 101 (1968)).
Before dispatching Officer Hanrahan to defendant's house, the Sparta Police Department received information from Mr.
*115 Walsh that a person driving a car subsequently identified as belonging to defendant had almost driven into him head-on. Walsh provided the police with the license plate number and followed the car until it entered defendant's driveway.
Our courts recognize that information provided to the police by an identified citizen informant, which is based on direct personal observations, has a substantial degree of reliability. Wildoner v. Borough of Ramsey, 162 N.J. 375, 390-92, 744 A.2d 1146 (2000); State v. Davis, 104 N.J. 490, 506, 517 A.2d 859 (1986); State v. Lakomy, 126 N.J.Super. 430, 435, 315 A.2d 46 (App.Div.1974). Therefore, before Hanrahan and other police officers arrived at defendant's house, the police had substantial evidence that someone had been driving defendant's car while in an impaired condition.
Before Officer Hanrahan entered her garage, defendant acknowledged that she was the one who had been driving the car and that she had consumed alcoholic beverages. Moreover, Hanrahan smelled the odor of alcohol emanating from defendant's breath and observed that her eyes were bloodshot and watery. When Hanrahan asked defendant to recite the alphabet, she was unable to do it correctly on either of two attempts.
We are satisfied that Walsh's report to the police of his observations of defendant's erratic operation of her car together with Officer Hanrahan's observations of indicia she was under the influence of alcohol provided Hanrahan with a "well grounded" suspicion that she had violated N.J.S.A. 39:4-50. Consequently, Officer Hanrahan had probable cause to arrest defendant and ask her to submit to a breathalyzer test.

B
It is clear that Officer Hanrahan did not need a warrant to walk down defendant's driveway to her garage. The protections of the Fourth Amendment are limited to a person's house and the "curtilage" of the house. United States v. Dunn, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334 (1987). "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." Ibid. Moreover, "a portion of the curtilage, being the normal route of access for anyone visiting the premises, is `only a semi-private area' ... Thus, when the police came on to private property to conduct an investigation ... and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." State v. Johnson, 171 N.J. 192, 209, 793 A.2d 619 (2002) (quoting 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 2.3(f) (3d ed.1996)); see also United States v. Reyes, 283 F.3d 446, 465-66 (2d Cir.), cert. denied, ___ U.S. ___, 123 S.Ct. 106, 154 L.Ed.2d 31 (2002).
Defendant did not have a fence across her driveway or take any other measure to prevent visitors from using the driveway to gain access to her house. Therefore, even if the part of the driveway immediately adjacent to her house were considered to be part of the curtilage, Officer Hanrahan was not subject to any constitutional constraint in walking down defendant's driveway to her garage to investigate Walsh's report she had been driving erratically.
It is also clear that Officer Hanrahan could have arrested defendant without a warrant if she had remained at the entranceway to her garage. The police do *116 not need a warrant to make an arrest in a public place. United States v. Watson, 423 U.S. 411, 417-24, 96 S.Ct. 820, 824-28, 46 L.Ed.2d 598, 605-09 (1976). The entranceway to a house is considered to be a public place because a person has no reasonable expectation of privacy while standing at that location. United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305 (1976); State v. McKenna, 228 N.J.Super. 468, 473-74, 550 A.2d 171 (App.Div.1988); see generally, 3 LaFave, supra, § 6.1(f). In Santana, the Court held that a woman observed standing directly in the doorway to her home, who the police had probable cause to believe was selling drugs, could be arrested without a warrant:
While it may be true that under the common law of property the threshold of one's dwelling is "private," as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a "public" place. She was not in an area where she had any expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house.
[427 U.S. at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305 (citations omitted).]
Hanrahan testified that when he first saw defendant, "she was standing right at the entrance of the garage facing towards me." Thus, as in Santana, defendant was in a public place at that point. Consequently, after Hanrahan observed the various indicia that defendant was intoxicated, thus corroborating the information Walsh had provided and establishing probable cause to believe she had been driving while under the influence, he could have arrested her without a warrant while she was standing in the entranceway to her garage.
Instead, Hanrahan ordered defendant to produce her driving credentials and followed her into the garage when she went to retrieve those documents. While they were in the garage, Hanrahan also ordered defendant to perform additional field sobriety tests. Hanrahan's order to defendant to produce her driving credentials and to perform various tests to determine whether she was intoxicated constituted a temporary investigative detention because a reasonable person in defendant's position would not have believed she was free to disobey Officer Hanrahan's directives and simply walk into her house. See Florida v. Royer, 460 U.S. 491, 501-02, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 239 (1983); State v. Citarella, 154 N.J. 272, 280, 712 A.2d 1096 (1998); Commonwealth v. Eckert, 431 Mass. 591, 728 N.E.2d 312 (2000); compare Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 216-17, 104 S.Ct. 1758, 1762-63, 80 L.Ed.2d 247, 255 (1984); State v. Sirianni, 347 N.J.Super. 382, 390-92, 790 A.2d 206 (App.Div.), certif. denied, 172 N.J. 178, 796 A.2d 894 (2002); see generally 4 LaFave, supra, § 9.3. Such a detention, sometimes referred to as a Terry stop, constitutes a "seizure" within the intent of the Fourth Amendment. Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 361 (1979); Terry v. Ohio, 392 U.S. 1, 16-20, 88 S.Ct. 1868, 1877-79, 20 L.Ed.2d 889, 903-05 (1968); see also Illinois v. McArthur, 531 U.S. 326, 121, S.Ct. 946, 148 L.Ed.2d 838 (2001). The question, therefore, is whether Officer Hanrahan was required to obtain a warrant before entering defendant's open garage in the course of this temporary investigative detention.
The police are prohibited from "making a warrantless and nonconsensual *117 entry into a suspect's home in order to make a routine felony arrest." Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639, 644 (1980). However, if the police undertake to arrest a person without a warrant in a public place and the suspect flees into his or her home, the police may follow to effectuate the arrest. Thus, the Court held in Santana that after the police attempted to arrest the suspect in her doorway and she tried to evade them by retreating into her vestibule, they could follow her to complete the arrest without seeking a warrant:
The only remaining question is whether her act of retreating into her house could thwart an otherwise proper arrest. We hold that it could not. In Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), we recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest he robber and to search for weapons. This case, involving a true "hot pursuit," is clearly governed by Warden; the need to act quickly here is even greater than in that case, while the intrusion is much less.... The fact that the pursuit here ended almost as soon as it began did not render it any the less a "hot pursuit" sufficient to justify the warrantless entry into Santana's house.
[Santana, supra, 427 U.S. at 42-43, 96 S.Ct. at 2409-10, 49 L.Ed.2d at 305.]
Although there was no "hot pursuit" in this case, that is because Officer Hanrahan had already "seized" defendant before he entered the garage by ordering her to recite the alphabet and to retrieve her driving credentials. See Brown, supra, 443 U.S. at 50, 99 S.Ct. at 2640, 61 L.Ed.2d at 361. Consequently, Hanrahan did not merely "set in motion" defendant's arrest before entering her house, as in Santana, but had taken the further step of placing her under a temporary investigative detention, which continued after he entered into her garage. See State v. Manthei, 130 Idaho 237, 939 P.2d 556, 559 (1997) (noting the absence of any "reason to distinguish between entry into a residence to complete a Terry stop and entry to complete a probable cause-based arrest"); see generally 4 LaFave, supra, § 9.2(d) at 44-46.[2]
Moreover, as in Santana, the intrusion into defendant's house was a limited one. Hanrahan merely walked with defendant through an open door into her garage. There was no forced entry or intrusion into a private area of the house such as a bedroom. See State v. Legg, 633 N.W.2d 763, 773 (Iowa 2001) (upholding arrest of suspect in garage for driving while under the influence partly on ground that "intrusion" into house was "relatively minimal."); Gasset v. State, 490 So. 2d 97, 99 (Fla.Dist.Ct.App.), review denied, 500 So.2d 544 (Fla.1986) (characterizing officers' warrantless entry into suspect's open garage while he was exiting his car as a "de minimus intrusion").
In arguing that Officer Hanrahan was required to obtain a warrant before entering defendant's garage, defendant relies upon Welsh v. Wisconsin, supra, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732, which held that the police may not enter a house *118 at night without a warrant to arrest a suspect for a nonjailable traffic offense. However, in this State a charge of driving while under the influence of alcohol may subject an offender to a jail term of up to thirty days even for a first offense. N.J.S.A. 39:4-50(a)(1). Consequently, under New Jersey law, unlike the Wisconsin statute involved in Welsh, driving while under the influence is not a "nonjailable traffic offense." Furthermore, the police did not arrest defendant "in the privacy of [her] own bedroom," as in Welsh, 466 U.S. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745, but rather in a garage the police entered through an open door. Most significantly, Welsh did not involve a situation where the police had already "seized" the suspect before entering her house.
Defendant also relies upon State v. Bolte, 115 N.J. 579, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989), which applied Welsh to a case where the police made a warrantless nighttime entry into a home to apprehend a suspect for various motor vehicle and disorderly persons offenses. The court held that those offenses "are within the category of `minor' offenses held by the Welsh Court to be insufficient to establish exigent circumstances justifying a warrantless home entry." Id. at 597, 560 A.2d 644. However, the Court also observed that "the question whether hot pursuit by police justifies a warrantless entry depends on the attendant circumstances." Ibid. In Bolte, the warrantless entry consisted of following defendant upstairs to his bedroom door where he was placed under arrest. Id. at 582, 560 A.2d 644. In contrast, the warrantless entry in this case consisted of the police simply walking through an open garage door with defendant while she went to retrieve her driving credentials. Most significantly, like Welsh, Bolte did not involve a situation where the police had already "seized" the suspect before entering his house.
In sum, Officer Hanrahan had probable cause to believe defendant had been driving while under the influence of alcohol before entering her garage. Moreover, Hanrahan had already "seized" defendant before following her into the garage when she went to retrieve her driving credentials. Therefore, Hanrahan was not required to obtain a warrant before completing his investigation and placing defendant under arrest.
Affirmed.
NOTES
[1] Defendant was also charged with other less serious motor vehicle offenses that are not involved in this appeal.
[2] Because Officer Hanrahan "seized" defendant before entering her garage, we have no need to decide whether the risk of dissipation of the alcohol in her blood would have established the exigent circumstances required to justify a warrantless entry into her garage to make an arrest even if she had not already been seized. Compare Welsh v. Wisconsin, 466 U.S. 740, 753-54, 104 S.Ct. 2091, 2099-100, 80 L.Ed.2d 732, 745-46 (1984) with State v. Paul, 548 N.W.2d 260, 266-68 (Minn.1996) and City of Orem v. Henrie, 868 P.2d 1384, 1388-93 (Utah Ct.App.1994).