**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2406-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KHALIF LEE,

    Defendant-Appellant.

_____

Submitted March 17, 2021 – Decided July 9, 2021

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-03-0909.

Joseph E. Krakora, Public Defender, attorney for appellant (Alison Perrone, First Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah F. Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Khalif Lee appeals from a September 10, 2018 order denying his motion to suppress physical evidence seized during a warrantless search. He also challenges a February 7, 2020 judgment of conviction resulting from his guilty plea. Because we find the State failed to demonstrate exigent circumstances justifying the warrantless search, we vacate the judgment of conviction, reinstate all counts of the indictment, direct the entry of an order granting defendant's suppression motion in conformity with this opinion, and remand for trial.

We glean the following facts from the limited testimony adduced at the suppression hearing. On January 7, 2016, Newark Police Detective Manuel Souto of the Fugitive Apprehension Squad was advised by the State Parole Fugitive Squad that an individual named Raheem Walker was wanted on a warrant for violating parole conditions. According to Detective Souto, Walker also had a warrant out for his arrest for "aggravated assault, shooting, [and] possession of weapons." To locate Walker, Detective Souto conducted background checks on Walker's associates and confirmed his last known addresses. The detective learned one of Walker's associates, Aniya Carter, lived in a two-story townhouse on Martin Luther King Boulevard in Newark.

On the morning of January 7, after searching unsuccessfully for Walker at other locations, two law enforcement teams went to Carter's townhouse to determine if Walker was at her residence. The officers assumed a "tactical stance" and surrounded the townhouse to prevent an escape, presumably by Walker, as well as to ensure "officer safety." Detective Souto positioned himself at the left side of the townhouse where there were "two or three windows," to make sure "nobody was coming out of the windows."

When officers began knocking on Carter's front door, Detective Souto saw defendant open a second-story window, place a handgun on the outside ledge, and close the window. Detective Souto advised his fellow officers about his observations. Officers continued to knock on Carter's front door until defendant voluntarily opened it. There is no evidence in the record the officers identified themselves as law enforcement before defendant opened the door.

Detective Souto ran to the front door and instantly recognized defendant as the person who placed the handgun on the window ledge. Defendant "was placed immediately under arrest," although the record does not reflect the exact location of defendant's arrest nor the initial charges for which defendant was arrested. Detective Souto confirmed defendant did not "try to resist or run," and

3

once defendant was "in handcuffs and under arrest," he was "not able to at that point flee or leave the location."

Officers then began "to look around to see if Mr. Walker was in" the townhouse, "or if anybody else was in the . . . townhouse hiding. And [they] checked everywhere a human being could possibly hide . . . . [f]or officer safety." They cleared the first floor and "let the officers from the back in the back entrance" of the townhouse. After clearing the first floor, Detective Souto "immediately went upstairs because [he] knew the weapon was there . . . . and just had to locate [it.]" The detective found the gun outside a bathroom window, "right on the ledge." He testified he did not touch the gun when he saw it on the windowsill, stating, "I left it there. We secured everything and we just waited for our Crime Scene to come."

Officers "started clearing the bedrooms, and . . . found another weapon on the floor in one of the bedrooms." After opening a closet "to see if anybody was hiding in that closet," the officers found an assault rifle and a large amount of narcotics in an open protein container. Detective Souto confirmed at the suppression hearing that officers did not need to open the protein container because it already was open with the "lid right next to it;" he also identified a

4

picture of the rifle, the protein container, and the narcotics recovered on the day of the incident. No one other than defendant was found at Carter's residence.

Detective Souto further testified that when he went to Carter's home, he did not know if she "was a girlfriend" or simply someone "associated with Walker." The detective also stated if Walker was not at Carter's home, he intended to "gather information, maybe get another address, maybe get a location, maybe try to . . . make contact somehow or other." Detective Souto confirmed the officers did not obtain a warrant to search Carter's residence.

The motion judge credited Detective Souto's testimony and denied defendant's suppression motion. In addressing the lawfulness of the warrantless search of Carter's townhouse, the judge initially concluded the Parole Board Doctrine[1] did not apply because law enforcement did not go to Carter's home believing Walker lived there and would be present when they arrived at the home. On the other hand, the judge found exigent circumstances gave rise to a permissible search, reasoning:

> In this regard, a deadly weapon poses a specific
> threat, both to the public and the police, and its presence

---

[1] The Parole Board Doctrine exception is set forth in N.J.A.C. 10A:72-6.3(c)(1). It provides: "A parole officer shall not enter a home of a third party to search for a parolee without having a warrant, unless the officer has an objectively reasonable basis to believe that the parolee named in the parole warrant resides in the home of the third party and is in the home of the third party at the time."

is a significant factor in evaluating whether there are exigent circumstances that will justify a warrantless search . . . .

So one factor to consider is the urgency of the situation and the time it would take to [secure] a warrant, the seriousness of the investigation, and the threat [of] whether the evidence could be destroyed or lost or there could be people that could be in danger . . . .

Here, Detective Souto [observed] . . . an individual opened the window, upstairs [in] the residence, placed what he recognized as a handgun on the ledge of the window. It's clear that a handgun poses a threat to the public, particularly in a residential neighborhood. It poses a threat to the police officers, as well.

Detective Souto knew that . . . Walker had been charged with the violent crime of aggravated assault, shooting, and weapons. So, he had reason to believe that Walker was a dangerous individual and . . . that the associate of Mr. Walker resided at that residence.

When the officers knocked and the door was opened, Detective Souto recognized the person opening the door as the same person who placed . . . the handgun on the window ledge.

So . . . the officers . . . were not aware if there were other individuals in the house. However, they did have every reason to enter the house, to secure that weapon that is clearly contraband. They . . . didn't know who was in the house. They had a responsibility to conduct a search for their own safety and to secure that weapon that was placed on the ledge.

6

> I find that . . . the officers . . . believed a female lived there, <u>they didn't know if she was in the house, if there were other people who could avail themselves to that weapon and, in fact, use it against anyone,</u> including the officers, that there was sufficient exigent circumstances for the officers to act immediately to try to secure that weapon. (Emphasis added).

The judge determined the officers were "lawfully at the premises . . . . to conduct an investigation" when Detective Souto saw defendant place a weapon on the window ledge, and the detective had "an affirmative duty to secure that weapon."

Additionally, the judge found the officers engaged in a permissible protective sweep to ensure their collective safety. She explained the officers had a "reasonable articulable suspicion to conduct a sweep" because they were looking for a dangerous person at Carter's home, believed Carter lived in the home, and "<u>didn't really know if another person was there, someone who could avail themselves to . . . that weapon.</u>" (Emphasis added). The judge found the officers had a "duty to go up to the second floor to retrieve that weapon. The only way they could do that is going through the house . . . to the location where they believed that that weapon had been placed." Further, the judge concluded the handgun placed on the window ledge, as well as other contraband discovered in plain view during the protective sweep was lawfully seized without a warrant. Accordingly, she denied defendant's suppression motion.

7

Defendant moved for leave to appeal the judge's interlocutory decision. We denied his application. Shortly thereafter, defendant entered into a negotiated agreement with the State to plead guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c); third-degree possession of a controlled dangerous substance (CDS) with intent to distribute within 1000 feet of a school zone (cocaine), N.J.S.A. 2C:35-7(a); and third-degree possession of CDS with intent to distribute within 1000 feet of a school zone (heroin), N.J.S.A. 2C:35-7(a). In exchange for his guilty plea, the prosecutor recommended the court sentence defendant to an aggregate three-year prison term with a one-year period of parole ineligibility, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), and dismiss all remaining charges under a twenty-count indictment. On February 7, 2020, the trial judge sentenced defendant in accordance with the terms of the plea agreement.

On appeal, defendant raises the following single argument:

> THE COURT ERRED IN FINDING BOTH EXIGENCY AND PROBABLE CAUSE; THEREFORE, THE DENIAL OF [DEFENDANT'S] MOTION TO SUPPRESS MUST BE REVERSED AND THE MATTER REMANDED FOR FURTHER PROCEEDINGS. (U.S. CONST., AMENDS. IV AND XIV; N.J. CONST., ART. I, ¶ 7).

We agree the trial court's suppression ruling cannot stand.

A-2406-19

Our review of a trial court's denial of a motion to suppress is limited. State v. Handy, 206 N.J. 39, 44-45 (2011). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Further, "[a]n appellate court should give deference to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964) (internal quotation marks omitted)). However, issues of law are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

"Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012). Searches and seizures conducted without a warrant, "particularly in a home, are presumptively unreasonable." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 585 (1989)). Therefore, the State must prove by a preponderance of the evidence that such searches and seizures are "justified by

9

one of the 'well-delineated exceptions' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

The existence of exigent circumstances constitutes an exception to the warrant requirement. State v. Johnson, 193 N.J. 528, 552 (2008). To invoke the exigent circumstances exception, "the State must show that the officers had [both] probable cause and faced an objective exigency" that did not permit time to secure a warrant. In the Interest of J.A., 233 N.J. 432, 448 (2018) (citations omitted). When the circumstances are sufficiently exigent that appearing before a judge to obtain a written warrant is either impossible or impracticable, but not so exigent that there is insufficient time to stabilize the situation and call for a warrant, police officers must obtain a telephonic warrant rather than conduct a warrantless search or seizure. Johnson, 193 N.J. at 556. Whether exigent circumstances are present is a fact-sensitive inquiry and we have previously enumerated the following relevant factors to be considered when addressing whether such circumstances exist:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband

are aware that the police are on their trail; (5) the ready destructibility of the contraband . . . ; (6) the gravity of the offense involved; (7) the possibility that the suspect is armed; (8) the strength or weakness of the facts establishing probable cause[;] and (9) the time of the entry.

[State v. Alvarez, 238 N.J. Super. 560, 568 (App. Div. 1990).]

In weighing such considerations, we are aware "[p]olice safety and the preservation of evidence remain the preeminent determinants of exigency." State v. Dunlap, 185 N.J. 543, 551 (2006); see also State v. Wilson, 362 N.J. Super. 319, 333 (App. Div. 2003) ("A deadly weapon poses a special threat to both the public and police, and its presence is a significant factor in evaluating whether there are exigent circumstances which justify a warrantless search."). Further, "exigent circumstances [created by the presence of a deadly weapon] do not dissipate simply because the particular [suspects] . . . may have been . . . arrested, or otherwise restricted in their freedom of movement." Wilson, 362 N.J. Super. at 334 (quoting State v. Alston, 88 N.J. 211, 234 (1981)). Nonetheless, our courts "have never held that a generalized concern about public or police safety or the preservation of evidence would justify a warrantless search or seizure. Certainly, permitting warrantless searches and seizures in the

absence of an objectively reasonable necessity would severely undermine the warrant requirement." State v. Manning, 240 N.J. 308, 335 (2020).

When reviewing the legality of an intrusion that enables law enforcement to search and seize property, we are mindful that areas of a property open to the public are subject to a diminished expectation of privacy. See State v. Johnson, 171 N.J. 192, 209 (2002). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Ibid. (quoting Katz v. United States, 389 U.S. 347, 351 (1967)). Accordingly, a warrant is not required for the police to knock on a front door "[i]n connection with an ongoing investigation," State v. Brown, 205 N.J. 133, 146 (2011); also, there is no reasonable expectation of privacy at the threshold of a doorway because it is a "public place," see State v. Nikola, 359 N.J. Super. 573, 582-83 (App. Div. 2003).

On the other hand, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." State v. Penalber, 386 N.J. Super. 1, 11 (App. Div. 2006) (quoting Payton v. New York, 445 U.S. 573, 590 (1980)). When considering a Fourth Amendment intrusion, our Supreme Court has confirmed the "sanctity of one's home is among our most cherished rights,"

Frankel, 179 N.J. at 611, so a home search "must be subjected to particularly careful scrutiny," State v. Cassidy, 179 N.J. 150, 160 (2004).  Also, our United States Supreme Court has held that absent exigent circumstances or consent, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. Steagald v. United States, 451 U.S. 204, 205-06 (1981).  Guided by these principles, we are satisfied the trial court's finding that the State established both probable cause and an objective exigency is simply not supported by the record.

We accept Detective Souto and other officers were permissibly on Carter's private property to conduct a legitimate investigation.  State v. Lane, 393 N.J. Super. 132, 147 (App. Div. 2007).  Also, defendant placed the gun on an outer window ledge, visible to anyone lawfully outside that area of the unit, so Detective Souto's observation of that act from his lawful vantage point did not implicate defendant's federal and state constitutional right to be free from unreasonable searches and seizures.  See id. at 146.  Yet the record does not reflect why officers believed they had probable cause to arrest defendant, the exact location of his arrest, or why officers concluded exigent circumstances existed to conduct a warrantless search of Carter's home once defendant was under arrest.

13

We also observe from the limited record that Detective Souto did not provide a reasonable basis to justify bypassing the warrant process once defendant was under arrest. For example, he did not discuss the amount of time he thought it would take to secure a telephonic or in person warrant, whether any suspected contraband might be subject to "ready destructibility," Alvarez, 238 N.J. at 568, or why it might be dangerous for officers to guard the site of any suspected contraband while a search warrant was sought. Detective Souto also did not testify he had a legitimate basis for believing other individuals were, in fact, in the townhouse or that he needed to act with dispatch because he knew "the physical well-being of people [would] be endangered unless immediate action [was] taken." Johnson, 193 N.J. at 553. The record is clear, however, that after Detective Souto joined fellow officers in searching the first floor of the townhouse and found the gun outside the second-story bathroom window ledge, he left it there, untouched, while waiting for the Crime Scene unit to arrive. There is no explanation in the record as to why officers could not have requested a search warrant during the period of time they awaited the arrival of the Crime Scene unit.

Additionally, the record does not reflect whether officers asked defendant if he lived at Carter's home. That is significant because if he did not live there,

A-2406-19

and he knowingly possessed a handgun "without first having obtained a permit to carry" it as provided in N.J.S.A. 2C:58-4, he would be guilty of a second-degree crime under N.J.S.A. 2C:39-5(b)(1). Morillo v. Torres, 222 N.J. 104, 109 (2015). However, if defendant was living in Carter's home when the search was conducted, he may have been exempt from prosecution for possession of a gun, pursuant to N.J.S.A. 2C:39-6(e).[2] Morillo, 222 N.J. at 108-09. Because the State failed to establish whether or not defendant was exempt from criminal liability for possessing the weapon he placed on the window ledge, we part company with the motion judge's finding the gun was "clearly contraband."

Notably, the motion judge did not address many of the Alvarez factors when determining if exigent circumstances existed. Instead, after acknowledging the need to consider "the urgency of the situation and the time it would take to [secure] a warrant," as well as "the threat [of] whether the evidence could be destroyed or lost," the judge generally discussed that police saw a gun placed on a window ledge, and determined officer safety required entry into the townhouse. She also found officers believed Carter lived at the

---

[2] The statutory exemption under N.J.S.A. 2C:39-6(e) "applies to possessing weapons inside one's dwelling or place of business." Morillo v. Torres, 222 N.J. at 121. "A homeowner who possesses a gun in his home . . . does not violate N.J.S.A. 2C:39-5 because under N.J.S.A. 2C:39-6(e), he is not carrying it." Id. at 121-22 (quoting State v. Harmon, 104 N.J. 189, 198-99 (1986)).

residence, but "they didn't know if she was in the house, if there were other people who could avail themselves to that [handgun]" and when defendant opened the door, "the officers . . . were not aware if there were other individuals in the house."

Given the scant evidence presented to the motion judge, and mindful "a generalized concern about public or police safety or the preservation of evidence" does not justify a warrantless search or seizure, Manning, 240 N.J. at 335, we are convinced the State did not establish, by a preponderance of evidence, the exigent circumstances exception to the warrant requirement. Stated differently, the limited facts elicited during Detective Souto's brief testimony failed to demonstrate exigent circumstances existed which precluded officers from obtaining a search warrant before they moved through Carter's home without her consent, seized defendant's gun, and removed contraband from the home.

For the sake of completeness, we note the State also did not present sufficient evidence establishing the officers' right to conduct a protective sweep or seize items in plain view while inside the townhouse. To establish the validity of a protective sweep search, the State needed to prove the officers were "lawfully within private premises for a legitimate purpose," and officers on the

scene had "a reasonable articulable suspicion that the area to be swept harbor[ed] an individual posing a danger," State v. Davila, 203 N.J. 97, 102 (2010), such that they were compelled to conduct "a quick and limited search of premises, . . . to protect the safety of police officers or others," State v. Cope, 224 N.J. 530, 546 (2016) (quoting Davila, 203 N.J. at 113). Under the protective sweep doctrine, the police are not permitted to access and search an area of a dwelling unless they reasonably believe one or more persons are hiding in that area and could harm the officers or others. See Maryland v. Buie, 494 U.S. 325, 327 (1990). "Mere presence of a person is not sufficient . . . ; officers also must articulate a basis for believing that the person present is dangerous before they may conduct a sweep" and "must point to individualized, rather than generalized, suspicion." Davila, 203 N.J. at 129. Given our discussion regarding Detective Souto's sparse testimony and the motion judge's findings, we are convinced the State's proofs were lacking in establishing officers had a reasonable basis to believe persons other than defendant were present in Carter's home and such persons posed a danger to officers at the scene. Additionally, because the scant evidence presented did not identify whether defendant was arrested while inside or outside of the residence, the State failed to prove the

officers were "lawfully within" the townhouse when they commenced the putative protective sweep. See id. at 102.

Moreover, to demonstrate officers were permitted to recover contraband in plain view, the State was required to prove the officers were "lawfully in the viewing area," discovered the evidence "inadvertently,"[3] and the criminality of the items must have been "immediately apparent" to the officers. State v. Earls, 214 N.J. 564, 592 (2013) (citing State v. Mann, 203 N.J. 328, 341 (2010)). For reasons we already have stated, the State was unable to establish officers were "lawfully in the viewing area" when they retrieved defendant's gun and contraband from inside Carter's residence.

To summarize, we are persuaded the State failed to establish officers had probable cause to believe a crime had been or was being committed in Carter's residence or that there was an objectively reasonable basis to believe exigent circumstances existed which precluded law enforcement from securing a search warrant on the day of the incident. Further, the State did not prove officers were entitled to conduct a protective sweep of Carter's residence or that the plain view exception permitted seizure of contraband in the townhouse.

---

[3] The inadvertence prong of the plain view exception was eliminated on a prospective basis under State v. Gonzalez, 227 N.J. 77, 101 (2016); it needed to be satisfied in the instant matter because the search predated Gonzalez.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2406-19