**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4314-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EARNEST BATES, a/k/a
DEMETRIUS BATES, and
DARRYL JONES,

     Defendant-Appellant.

_____

          Submitted November 12, 2019 – Decided February 28, 2020

          Before Judges Rothstadt and Moynihan.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 09-06-1075, 10-05-0270, 10-07-0983, and 10-07-0995.

          Joseph E. Krakora, Public Defender, attorney for appellant (Thomas Gerard Hand, Designated Counsel, on the brief).

          Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ernest Bates appeals from the denial of his post-conviction relief (PCR) petition without an evidentiary hearing, arguing:

> THE TRIAL COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING WHEN IT ACCEPTED THE ASSERTIONS MADE IN TRIAL COUNSEL'S CERTIFICATION AS TRUE WITHOUT SUBJECTING THESE ASSERTIONS TO BE TESTED IN THE CRUCIBLE OF CROSS-EXAMINATION.

Unpersuaded, we affirm.

Defendant was charged in two indictments that were later consolidated for trial. He was charged under Indictment No. 10-05-0270 with second-degree conspiracy to distribute one-half ounce of heroin or more, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(2) and N.J.S.A. 2C:5-2 (count one); and under Indictment No. 10-07-0983—a thirty count indictment—with second-degree conspiracy to distribute heroin in a quantity of over five ounces, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(1) and N.J.S.A. 2C:5-2 (count one); first-degree possession with intent to distribute five ounces or more of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count three); first-degree distribution of five ounces or more of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(1) (count four); third-degree possession of a controlled dangerous

2

substance of heroin, N.J.S.A. 2C:35-10(a)(1) (count five); third-degree possession with intent to distribute less than one-half ounce of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count twelve): third-degree possession of a controlled substance, heroin, N.J.S.A. 2C:35-10(a)(1) (count thirteen); and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25 (count eighteen). Codefendants Johnel Dunlap and William Newbill were also charged with defendant in counts one, three, four, five and eighteen; Newbill was charged with defendant in counts twelve and thirteen.

We set forth the salient facts of this case when we addressed all three codefendants' direct appeal, State v. Dunlap, Nos. A-4298-12, A-5606-12, A-0329-13 (App. Div. Jan. 19, 2016), and will not repeat them here unless they are germane to this appeal. Suffice it to say, defendant joined in pretrial motions to suppress evidence, including "551 bricks of heroin in three separate bags" seized from a blue Infiniti, and to dismiss the indictment or counts thereof. Id. at 7-8.

Over two months after the motions were denied, defendant accepted the State's plea offer, pleading guilty to second-degree conspiracy to distribute heroin in a quantity of one-half ounce or more (count one of Indictment No. 10-05-0270), and to first-degree distribution of five ounces or more of heroin (count four of Indictment No. 10-07-0983). He was sentenced in accordance with the

plea agreement to eighteen years imprisonment with fifty months parole ineligibility on the first-degree drug distribution charge, concurrent to seven years imprisonment on the second-degree conspiracy charge.[1]

Reviewing the factual inferences drawn from the record by the PCR court and its legal conclusions de novo, State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), we address defendant's contentions relating to his right to appeal the denial of the motion to dismiss the indictment, trial counsel's failure to investigate and reopen the motion to suppress evidence hearing, and failure of trial counsel to communicate with him. In so doing, we apply the familiar two-pronged standard that requires a defendant seeking to establish a claim of ineffective assistance of counsel to satisfy the test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient

---

[1] Defendant was also sentenced to a consecutive six-month term of incarceration on a disorderly persons offense arising out of Indictment No. 09-06-1075. Defendant's petition for PCR does not involve the plea or sentence on that indictment.

performance, <u>Strickland</u>, 466 U.S. at 687, 691-92.  Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. <u>Fritz</u>, 105 N.J. at 58.

Although defendant affirmatively answered the question in the plea form asking if he understood "that by pleading guilty [he was] waiving [his] right to appeal the denial of all . . . pretrial motions," he also answered affirmatively his trial counsel's question during the plea colloquy asking if he understood "that by giving up [his] right to trial, [he was] not giving up [his] right to appeal [the] motion to suppress or the motion to dismiss that [he] was a part of[.]"  He argues "[t]he PCR court had no basis to conclude that trial counsel 'simply misspoke'" when she advised defendant he could appeal, without hearing testimony at an evidentiary hearing from defendant, his trial counsel and the assistant prosecutor who submitted a certification in opposition to the PCR petition averring "[t]he State also would not have allowed any of the three . . . defendants to have entered into a conditional plea of any kind[.]"

In considering Dunlap's direct-appeal argument that the trial court erred in denying his motion to dismiss the indictment, we noted the tenets applicable to defendant's present argument:

> "A plea of guilty amounts to a waiver of all issues, including constitutional claims, that were or could have

been raised in prior proceedings." State v. Marolda, 394 N.J. Super. 430, 435 (App. Div. 2007). In State v. Knight, 183 N.J. 449 (2005) the Court reviewed the three exceptions to the general rule of waiver:

> First, Rule 3:5-7(d) and Rule 7:5-2(c)(2) permit a defendant to appeal the denial of a Fourth Amendment-based motion to suppress evidence after a conviction whether based on a guilty plea or a conviction. . . .
>
> Second, Rule 3:28(g), permits a defendant to appeal the denial of admission into a pretrial intervention program. . . .
>
> Third, . . . Rule 3:9-3(f), expressly authorizes a defendant to "enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion."
>
> [Id. at 471.]

[Dunlap, slip op. at 9-10.]

We agree with defendant that the PCR court should not have resolved the conflicting answers on the plea form and those made in open court by crediting the assistant prosecutor's certification that none of the codefendants' pleas were conditional. That statement was belied by the uncontradicted statement of defendant's trial counsel during the plea colloquy.

A-4314-17T1

But even if trial counsel "misspoke," defendant has not presented a prima facie case that he was prejudiced by her incorrect advice. We first note that defendant did not appeal from the denial of the dismissal motion. Moreover, he proffers no viable ground to support such an appeal.

Alluding to N.J.S.A. 2C:35-5(c),[2] defendant observes "[t]he PCR court determined trial counsel was not ineffective in failing to file a motion to dismiss because [defendant] had notice of the aggregation of the individual drug sales" to support those counts in the indictment that relied on the aggregate weight of the drugs being in the first-degree range.[3] Defendant argues the PCR court was

---

[2] N.J.S.A. 2C:35-5(c) provides:

> Where the degree of the offense for violation of this section depends on the quantity of the substance, the quantity involved shall be determined by the trier of fact. Where the indictment or accusation so provides, the quantity involved in individual acts of manufacturing, distribution, dispensing or possessing with intent to distribute may be aggregated in determining the grade of the offense, whether distribution or dispensing is to the same person or several persons, provided that each individual act of manufacturing, distribution, dispensing or possession with intent to distribute was committed within the applicable statute of limitations.

[3] The indictment alleged five ounces or more of heroin were possessed with the intent to distribute and were distributed, crimes of the first-degree because of the weight of the heroin. See N.J.S.A. 2C:35-5(b)(1).

A-4314-17T1

required to hear trial counsel's testimony at an evidentiary hearing before making that determination. We disagree because defendant did not present a prima facie case to warrant an evidentiary hearing. See State v. Preciose, 129 N.J. 451, 462-63 (1992); R. 3:22-10(b).

An evidentiary hearing should only be granted if a defendant has established a prima facie case of ineffective assistance of counsel. Preciose, 129 N.J. at 462. Rule 3:22-1 does not require that an evidentiary hearing be granted in every PCR proceeding. Ibid. Where a "court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing, then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted). "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). And an evidentiary hearing cannot be used to explore PCR claims. See Marshall, 148 N.J. at 157-58. As such, an evidentiary hearing was properly denied.

As we noted on direct appeal, count four of Indictment No. 10-07-0983, charging defendant with first-degree distribution of heroin—the count to which defendant pleaded guilty—"clearly charges defendants with multiple distributions on various dates in several locations and, by virtue of the degree of the offense, put them on notice as to the amount of heroin the State was required to establish to prove guilt." Dunlap, slip op. at 24. We further note 551 bricks were found in the Infiniti, providing sufficient notice of the drug-weight alleged by the State. Id. at 7. As such, any motion to dismiss the indictment for failure to provide in the indictment that the weight of the drugs was based on aggregated amounts, see N.J.S.A. 2C:35-5(c), would have failed, as would have an appeal based on that ground. Defendant failed to satisfy his burden to show that the proposed motion would have been successful if filed. See State v. Fisher, 156 N.J. 494, 501 (1998).

We determine defendant's remaining arguments regarding trial counsel's failure to file independent pretrial motions, instead of joining those filed by codefendants, to be without sufficient merit to warrant discussion. R. 2:11-3(e)(2). Defendant neither avers nor shows any resultant prejudice from counsel's choice.

A-4314-17T1

Defendant also asserts "[t]he PCR court erred when it found [defendant] had not presented a prima facie case regarding the allegation that trial counsel was ineffective in failing to file a motion to re[]open the motion to suppress based on the observations of [R.F.] and [L.E.G.],"[4] reprising his argument that "the PCR court had no record upon which to decide the issue" without hearing testimony from trial counsel about the "investigation she performed regarding" those witnesses' observations, as well as testimony from those witnesses. Defendant also claims trial counsel's failure to independently investigate, obtain statements from and produce those witnesses was ineffective.

The witnesses contradicted testimony heard during the suppression motion from the State's witnesses from the Middlesex County Prosecutor's Office. Investigator Felix de la Cruz testified he observed two vehicles, including the Infiniti, from the time they were delivered to a secured lot until he left with Investigator Jose Rodriguez to apply for search warrants for same at 3:00 p.m., during which time the vehicles were not searched. After obtaining the search warrants, Rodriguez called Sergeant Steven Weitz to advise he was authorized to search the vehicles. Rodriguez testified that he picked up de la

_____

[4] As we did in our decision on direct appeal, we use the initials of these witnesses.

Cruz from the lot and transported him to the judge to whom the search warrant applications were made. He also said that after the warrants were issued at approximately 4:10 p.m., he called Weitz and notified him the judge had authorized the search of the vehicles. Weitz testified he instructed a detective to maintain watch on the vehicles until the search warrants were obtained; and saw no one enter the vehicles until he received notice at approximately 4:15 p.m. that the search warrants were issued.

After the suppression-hearing testimony on May 23, 2012 concluded, Dunlap's counsel told the court that his "office has, through various sources, contacted two witnesses" who provided information "contrary to the testimony of the [s]ergeant as to the search of the Chrysler"; the Chrysler was not one of the vehicle secured in the lot for which de la Cruz and Rodriguez applied for search warrants. Dunlap's counsel continued:

> For whatever reason, and I'm trying to find out, their story has changed. I believe[] on information and belief that they were approached and questioned by members -- I don't know if it was the [p]rosecutor, what they indicated, it was police people who questioned them. They are ducking my subpoena.

Dunlap's counsel later said that he got "confused with the cars [and was] getting this thirdhand from the investigators" that the "information was that the vehicles, plural, [were] searched prior to obtaining the search warrants"; he later

11

clarified he was referring to all vehicles that were searched. Dunlap's counsel requested time to investigate and personally question the witnesses. Dunlap's counsel admitted his detective had not yet written a summary of what the witnesses said and that he could not "get the witnesses" and that the witnesses "ain't coming around here."

As we noted on direct appeal:

> During the lunch recess, trial counsel sent an investigator, who was able to speak to one of the witnesses. He reported to the court that the witness "was not very happy with cooperating" and was not subpoenaed; counsel requested an opportunity to speak to the witness himself and represented he could report back to the court in a week. Counsel advised that he had no contact with the second witness.
>
> [Dunlap, slip op. at 21-22.]

The court denied Dunlap's counsel's request for additional time to investigate, but said it was inclined to reopen the suppression hearing for additional testimony if affidavits and certifications from the witnesses were obtained.

When rendering its decision on July 12, 2012, the motion court held:

> On May 23, 2012, defendant for the first time argued that he has evidence that the vehicles were searched prior to obtaining the search warrant. However, no other information was provided to the [c]ourt regarding details as to such evidence. Defendant was unable to

12

provide the [c]ourt with where this information came from, the reliability of the source and the information itself, and how defendant intended on proving that such evidence existed. At this time, the [c]ourt will not consider this argument within its decision regarding defendant's motion to suppress. With that said, the [c]ourt invites defendant to provide the [c]ourt with certified papers from all relevant parties containing specificity as to such evidence and information regarding witnesses' availability to testify.

In a written statement dated December 5, 2011, R.F. said he saw police "tearing apart two cars," one of which was the Infiniti. He claimed two detectives were removing items from the Infiniti between 11:00 a.m. and noon on March 26, 2010. In a written statement dated December 5, 2011, L.E.G. said Dunlap brought in the other car in the secured lot with the Infiniti—a Honda—for repair on March 26, 2010. He stated police took the Honda from his shop, and in what is obviously not his first language described the subsequent police action:

> [L.E.G.:] He park the pick-up . . . have a one pick-up[.] The police park in the rear. But he not touch the car. He look at the car, but no touch, but no exactly. I don't know if he touch or not, but he stay inside, no outside. He look at the car maybe in [thirty] minute, [twenty] minute, he bring the sign, the police, he say give me the fucking keys. Ok. I take the key. He take the car. And inside there. I don't know exactly where he parked.
>
>    . . . .

[PRIVATE INVESTIGATOR:]  Alright.  At any time did you see them search a van?

[L.E.G.:]  No.

[PRIVATE INVESTIGATOR:]  Or, and did you see them search a um, a blue [I]nfiniti?

[L.E.G.:]  The blue [I]nfiniti, yes.

[PRIVATE INVESTIGATOR:]  Did you see them open the door and go into the vehicle?

[L.E.G.:]  No.

[PRIVATE INVESTIGATOR:]  What can you tell me about what you observed, what you saw in regard to the blue Infiniti?

[L.E.G.:]  The blue Infiniti she passed there.  I don't know who's drive it.  They move the car there in the garage side, in the third street.

[PRIVATE INVESTIGATOR:]  What you are trying to tell me and you are directing me with your hands as you speak, they came up Park and made a right hand turn onto Third Street.

[L.E.G.:]  Yes.

[PRIVATE INVESTIGATOR:]  And which would be passed your place of business?

[L.E.G.:]  Yeah.

[PRIVATE INVESTIGATOR:]  Ok.  And approximately what time was that?

14

A-4314-17T1

[L.E.G.:] Maybe one hour or two hour more there, he take the Honda. Maybe for twelve o'clock. Maybe yeah.

[PRIVATE INVESTIGATOR:] And at any time did you see them search the van?

[L.E.G.:] No.

[PRIVATE INVESTIGATOR:] Open the doors, open the trunk?

[L.E.G.:] Nothing. I know look at nothing.

[PRIVATE INVESTIGATOR:] Ok. Did you watch any of the other activity that was go[i]ng on down the street on that date?

[L.E.G.:] No exactly, no. I see one [p]olice dog, have one [p]olice dog. That was it. I know look at this exactly complete.

In considering Dunlap's claim on direct appeal that his counsel was ineffective for failing to call R.F. and L.E.G. at the suppression hearing, we were satisfied on the record that included transcripts of the December 2011 statements that we have quoted,

> that [Dunlap's] proof of the first [Strickland-Fritz] prong fails, particularly in light of the strategic decision that faced trial counsel. "As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial." State v. Castagna, 187 N.J. 293, 314-15 (2006) (citation omitted). To the extent

15

[Dunlap's] argument rests upon information outside the record, it is best reserved for a petition for [PCR].

[Dunlap, slip op. at 23-24.]

The same analysis compels rejection of defendant's claim that trial counsel was ineffective for failing to call the same witnesses. The witnesses did not respond to Dunlap's counsel's subpoenas, were disinclined to cooperate with defendant's investigator despite repeated entreaties, and L.E.G., taking his statement as a whole, denied seeing police search the vehicles. Moreover, the present record reveals that R.F.'s statement was not notarized until November 3, 2014, and L.E.G.'s statement was not notarized until December 16, 2014, well after the close of the suppression-hearing testimony on May 23, 2012—and well after defendant was sentenced on April 30, 2013.

Furthermore, defendant proffers nothing that an independent investigation would have revealed. The statements that were notarized in 2014 were identical to those given in 2011. There is no further information that was previously outside the record to warrant PCR. As the PCR court determined, defendant "has not offered anything outside of what . . . Dunlap argued" to this court on direct appeal.

When, as in this case, a defendant claims that his or her trial attorney "inadequately investigated his case, he must assert the facts that an investigation

would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170. "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid.; see also State v. Porter, 216 N.J. 343, 356-57 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing). In other words, a defendant must identify what the investigation would have revealed and demonstrate the way the evidence probably would have changed the result. Fritz, 105 N.J. at 64-65. Defendant has failed to meet that burden.

And, despite the notarization of the statements, defendant has made no proffer that the witnesses would now be willing to testify so as to warrant reopening the suppression hearing. As we found with regard to Dunlap's similar claim on direct appeal, defendant's trial counsel was not ineffective in failing to reopen the motion to suppress based on the witnesses' observations, or to independently investigate, obtain statements from and produce those witnesses.

A defendant's "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). "Mere improvident strategy, bad tactics or mistake do not amount to

17

ineffective assistance of counsel unless, taken as a whole, the trial was a mockery of justice." State v. Bonet, 132 N.J. Super. 186, 191 (App. Div. 1975). The simple fact that a trial strategy fails does not necessarily mean that counsel was ineffective. State v. Bey, 161 N.J 233, 251 (1999).

According the presumption that counsel's conduct fell within the range of reasonable professional assistance, State v. Arthur, 184 N.J. 307, 318-19 (2005), and adhering to the tenet that "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial," Castagna, 187 N.J. at 314, we determine defendant has not established his counsel's performance was deficient.

Finally, we determine defendant's contention that his trial counsel failed to consult and communicate with him to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). Defendant concedes "[t]he PCR court properly found the number of times trial counsel visited with [him] was not indicative of her effectiveness" but states "the crucial finding that needed to be made was the quality of communication between trial counsel and [defendant]." Although we do not countenance the PCR court's reliance on the assistant prosecutor's certification that trial counsel "secure[d] the best deal" for defendant and reviewed the wiretap transcripts with the assistant prosecutor as

18

countering defendant's failure-to-consult allegation, we agree that defendant has made nothing more than a bald assertion. Defendant has not proffered what should have been discussed with counsel and how the failure to do so caused prejudice.

Inasmuch as counsel failed to establish a prima facie case of ineffective assistance of counsel, his petition was properly denied without an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION