# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0625-23

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

B.D.P.,[1]

      Defendant-Appellant.

_____

Argued March 24, 2025 – Decided July 16, 2025

Before Judges Sabatino and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-05-0308.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Brian P. Keenan, of counsel and on the briefs).

Kaili E. Matthews, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

---

[1] We use initials of the parties to protect the child's privacy interests. R. 1:38-3(d)(11).

General, attorney; Steven A. Yomtov, Deputy Attorney General, and Kaili E. Matthews, of counsel and on the brief).

PER CURIAM

After his motion to suppress images of child pornography seized from his cell phone pursuant to a warrant was denied, defendant pleaded guilty to charges of possession and distribution of pornographic images and child endangerment. In accordance with the plea agreement, the judge sentenced him to an aggregate custodial term of fifteen years, with seven-and-a-half years of parole ineligibility. Defendant now appeals his convictions and sentence, contending the judge should have granted his motion to suppress. We disagree and affirm.

I.

Between August and November 2018, while incarcerated at South Woods State Prison, defendant exchanged text messages with co-defendant Craig Reeves.[2] In substance, defendant agreed to receive "child sexual abuse exploitive material" (CSAEM) for subsequent distribution to others. This exchange was detected and flagged, prompting an investigation.

Following release from prison in June 2019, defendant was placed on

---

[2] Craig Reeves is not a party to this appeal.

2

parole supervision for life (PSL), with a condition that he wear an ankle monitoring bracelet. On January 29, 2020, defendant violated conditions of parole by removing his ankle monitor. Parole officers, joined by Sergeant Justin Cocuzza of the Keansburg Police Department, travelled to the residence of defendant's ex-girlfriend, Carol Paone, to inquire of his whereabouts. Paone denied knowing his whereabouts but disclosed that she had in her possession two cell phones belonging to defendant. Paone explained that while searching defendant's smartphone to delete pictures of herself a month earlier, she discovered multiple pictures and videos of "very under aged" girls performing sexual acts. Concerned that defendant was using her laptop to access inappropriate material, Paone voluntarily surrendered her laptop to Sergeant Cocuzza for examination. The Sergeant also accepted in custody from Paone a Verizon ZTE smartphone, formerly belonging to defendant.

On February 4, 2020, Paone met with Keansburg Detective Thomas Sheehan and signed a consent form permitting a search of her laptop. The search proved negative for images of child pornography, however, Paone maintained her statement regarding the presence of pictures and video of children engaged in sex acts found on the "Verizon ZTE smartphone with a cracked screen." On February 10, Paone provided a sworn statement relaying that defendant's

3

smartphone contained photographs and videos of five- to six-year-old girls "completely naked performing oral sex with older men." She also played a voice message from defendant in which he asked Paone to get rid of "the cracked thing," referring to the Verizon smartphone with cracked screen.

Based on this information, Sheehan applied for a search warrant. In his affidavit, Sheehan stated that Paone's statements sufficed to establish probable cause. In seeking "any and all data and information, electronic or otherwise, stored on or within" the smartphone, Sheehan cited concern with evidence concealment and destruction and the need "to examine all the stored data to determine which particular files are evidence or instrumentalities of crimes." Specifically, police sought: (1) the assigned phone number of the cell phone; (2) serial numbers, passwords, and PIN numbers; (3) settings; (4) call histories; (5) calendar and planner information; (6) contact and programmed numbers; (7) text and email messages including unsent, read, unread, and draft messages and memos; (8) photographs and videos; viewed and/or saved websites; and (9) saved tasks and digital copies of handwritten notes among other information.

Detective Sheehan prepared an affidavit in which he avowed:

> Your affiant is aware that computers, cell phones and other electronic storage devices like hard disks, diskettes, tapes, and optical disks generally can store the equivalent of thousands of pages of information.

4

Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file name. This may require searching authorities to examine all the store data to determine which particular files are evidence or instrumentalities of crimes. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site. Moreover, searching electronic devices and computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of electronic hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. Additionally, data search protocols are exacting technical procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, coded or encrypted files. Since electronic evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is preferred for complete and accurate analysis. In fact, your affiant is aware that trained computer forensic investigators have been able to recover information from magnetic (hard drives) and other computer media long after (in some cases in excess of a year) it had been deleted by the owner/user of the computer.

Sheehan further explained in his affidavit that, to "fully retrieve data" from the phone, "the analyst will need access to all storage media and devices that were or may have been used by the suspect."

5

That same day, a Superior Court judge approved a warrant authorizing the Keansburg Police Department to search the entire contents of the smartphone from which the police retrieved over 1,000 images of CSAEM stored between September 29 and December 25, 2019.  Detectives also found text messages between defendant and his minor daughter from November 2019, in which defendant made sexual comments and arranged for her to take an airplane flight from Florida to New Jersey, unaccompanied by an adult.

Through a separate ongoing investigation, detectives uncovered additional evidence of child endangerment committed by defendant.  Between August 27 and November 15, 2018, while in custody at South Woods State Prison and prior to his release on parole, defendant had exchanged text messages with Reeves.  They agreed that Reeves would send defendant pornographic images of children and defendant would distribute the images to other inmates at South Woods.  Defendant and Reeves also exchanged text messages in which defendant expressed his intention to engage in sexual acts with his daughter.

In May 2021, a Monmouth County grand jury returned an indictment charging defendant with ten counts of offenses related to possession and distribution of child pornography and endangering the welfare of a child. Defendant later pled guilty to three counts: second-degree conspiracy to

endanger the welfare of a child, N.J.S.A. 2C:5-2, and N.J.S.A. 2C:24-4(b)(5)(a)(i) (count one) (concerning his agreement with Reeves to distribute CSAEM); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b)(ii) (count five) (for possession of over 1,000 images of child pornography); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2) (count seven) (for arranging his daughter—who was eleven and twelve at the time in question—to travel unaccompanied from Florida to New Jersey).

Franks Motion[3]

Defendant moved for a Franks hearing and to suppress the evidence seized under the search warrant, maintaining the warrant did not contain facts sufficient to establish probable cause. At the March 4, 2022 hearing, defendant asserted detectives showed a "reckless disregard for the truth" by relying on Paone's statements, where detectives had "control" over preparation of the statement and, by extension, its content. Defendant contended a video-recorded statement would have been more spontaneous and less controlled. Defendant also referred

---

[3] Franks v. Delaware, 438 U.S. 154 (1978) (holding that a warrant is not valid if the affidavit contains a statement, necessary to the finding of probable cause, that is demonstrably false and included by the affiant knowingly and intentionally, or with reckless disregard for the truth).

to the parole officer's notes, which reflected Detective Sheehan initially did not believe he had probable cause to search the smartphone. According to defendant, the omission of the parole officer's notes from the affidavit evidenced a disregard for the truth.

The State maintained Paone's statements were credible, as she consistently described the contents of the pictures and certified the truth of her statements. The State highlighted there was significant investigation done after the initial encounter with Paone sufficient to form probable cause, rendering immaterial Detective Sheehan's tentative determination that probable cause for a warrant did not exist.

The court denied defendant's request for a Franks hearing. First, the court found the parole officer's note "that someone told the parole officer that there was insufficient probable cause at a time" was hearsay. Further, the court observed that upon completion, the affidavit of probable cause supplied the probable cause necessary to issue a warrant. It elaborated, "There was literally nothing in what was supplied to this [c]ourt that gives this [c]ourt any pause or any concern that there was any intentional wrongdoing or falsehood on the part of the affiant here." Second, the court dismissed defendant's contention that video-recorded statements were required of witnesses, noting there is no such

requirement under rule of law or Attorney General directive. Finally, the court noted there was nothing in the record to indicate Paone was forced into making statements that were untrue.

Following this ruling, the State offered defendant a plea on counts one, five, and seven, in exchange for a fifteen-year sentence with seven-and-a-half years of parole ineligibility. At the April 25, 2022 plea hearing, the court reviewed the terms of the plea agreement with defendant, cautioning "that that exposure . . . you have is massive." The court also advised defendant to discuss terms of the agreement with his attorney. After consulting with counsel, defendant accepted the terms and articulated factual bases to the court's satisfaction.

Several weeks later, on May 12, 2023, defendant moved to withdraw his plea, second-guessing the factual basis he had given for count seven, endangering the welfare of a child. The court stated it would grant the plea withdrawal if appropriate but emphasized that defendant would then be "exposed to life in prison." Defendant conferred with his attorney, then re-allocuted to count seven to his, the State's, and the court's satisfaction.

Sentencing

At the October 13, 2023 sentencing hearing, defendant acknowledged his guilt for soliciting pornographic images of children but maintained he was "taking steroids in there, and that made [his] libido jump through the roof." He denied attempting to lure his daughter to New Jersey to commit sexual acts on her. Instead, he maintained that his daughter "was clearly coached or pushed along" to accuse him of wrongdoing. Defendant also maintained there was insufficient proof that he possessed the smartphone that contained pornographic images of children. The court called attention to defendant's statements during the plea hearing in which he confirmed sending his daughter inappropriate messages using the smartphone. Defendant insisted, however, that he had "no choice" but to take the plea. When court reconvened, defendant reaffirmed his allocution to count seven.

The court found aggravating factor three, citing defendant's violations of two prior final restraining orders and parole conditions, as well as the results of the Static-99R testing, indicating defendant was at high risk of re-offending. The court also found aggravating factor six, noting defendant had an extensive criminal record consisting of a juvenile adjudication for burglary, six municipal court convictions, and four adult convictions. Finally, the court found

aggravating factor nine, concluding there was a specific need to deter defendant and a general need to deter abuse of young children. The court assigned all three aggravating factors "significant" weight. While acknowledging defendant's history of substance abuse, the court did not find substance abuse constituted a mitigating factor.

Accordingly, the court sentenced defendant to a prison term of nine years on count one, fifteen years with seven-and-a-half years of parole ineligibility on count five, and ten years on count seven, all counts to run concurrently. Defendant was subject to Megan's Law reporting requirements, N.J.S.A. 2C:7-1 to -23, parole supervision for life, N.J.S.A. 2C:43-6.4, and mandatory fines and penalties.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE MOTION COURT ERRED IN DENYING SUPPRESSION OF EVIDENCE RESULTING FROM THE ISSUANCE OF AN OVERBROAD AND UNPARTICULARIZED SEARCH WARRANT AUTHORIZING THE SEARCH OF THE ENTIRE CONTENTS OF THE SMART PHONE WHEN THE AFFIDAVIT SUPPORTED ONLY A LIMITED SEARCH FOR THE PHOTOGRAPHS AND VIDEOS DESCRIBED IN THE AFFIDAVIT.
>
> > A. The Warrant Was Fatally Overbroad and Unparticularized Because The Ex-

Girlfriend's Statement Did Not Provide Probable Cause to Examine the Entire Contents of the Smart Phone.

B. The Remedy for this Type of General Exploratory Warrant – Which Lacks Any Particularity and Authorizes the Police to Examine All Data – Is to Suppress All Data.

POINT II

THE MOTION JUDGE ERRED IN CONDUCTING THE SUPPRESSION HEARING ON A WARRANT HE SIGNED. (Not Raised Below)

POINT III

THE SENTENCING COURT FAILED TO FIND MITIGATING FACTORS PRESENT IN THE RECORD, RESULTING IN A MANIFESTLY EXCESSIVE SENTENCE.

II.

"Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Knight, 183 N.J. 449, 470 (2005) (quoting State v. Crawley, 149 N.J. 310, 316 (1997)). There are three exceptions to this general rule of waiver. One such exception is Rule 3:5-7(d), which provides, "[d]enial of a motion made pursuant to [a motion to suppress evidence] may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following

12

a plea of guilty." In reviewing the trial court's decision on a motion to suppress, this court gives deference to findings based on credibility and determines whether the judge's findings are supported by sufficient credible evidence. State v. A.M., 237 N.J. 384, 395 (2019). We review legal conclusions de novo. State v. Marolda, 394 N.J. Super. 430, 442 (App. Div. 2007). However, issues raised for the first time on appeal are reviewed for plain error and this court "must disregard any unchallenged errors or omissions unless they are 'clearly capable of producing an unjust result.'" State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting R. 2:10-2).

The Fourth Amendment to the United States Constitution and the New Jersey Constitution protect citizens against unreasonable searches and seizures. Specifically, Article I, Paragraph 7 of the New Jersey Constitution provides that "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." A finding of probable cause warrant requires "a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). "[T]he probable cause determination must be . . . based on the information contained within the four

corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Schneider v. Simonini, 163 N.J. 336, 363 (2000). Because a search warrant "enjoys a presumption of validity, . . . a defendant challenging the validity of a search warrant bears the burden of proving there was no probable cause supporting the issuance of the warrant." State v. Missak, 476 N.J. Super. 302, 307 (App. Div. 2023) (citations omitted) (internal quotation marks omitted).

Defendant contends the motion court erred in denying suppression of the evidence because the warrant was unparticularized and not supported by probable cause to conduct a full search of defendant's cell phone. In opposition, the State observes defendant challenges the warrant's particularity for the first time on appeal. The State further maintains that the search warrant was supported by probable cause to conduct a full search of the phone as "it included a more detailed explanation as to why examiners needed full access to defendant's phone."

In Missak, this court addressed the proper scope of a search warrant for the contents of a cellular phone seized from defendant following his arrest for attempted sexual assault. 476 N.J. Super. at 307. There, the defendant used two chatting applications to communicate with an individual he believed to be a

fourteen-year-old girl and attempted to lure her to a location to perform sexual acts. Ibid. Incident to defendant's arrest, the officers seized a cellphone on defendant's person and secured it pending the approval of a search warrant. The special agent, who had feigned being the minor girl, attested that mobile devices have the capacity to store immense amounts of data, facilitating concealment of incriminating evidence. Id. at 308. For that reason, the agent prepared a warrant seeking "all of the data on a computer, electronic device, or storage media" on defendant's smart phone, including stored electronic data, all calls and messages, stored pictures and videos, GPS data, calendar information, encrypted files, and any other stored information helpful to the investigation. Id. at 310. The court approved the search warrant, finding that the agent's certification established probable cause to search the entire contents of the phone. Id. at 311.

On appeal, the Missak court held the warrant overbroad. Id. at 312. Specifically, "the warrant's infirmity [was] grounded in its authorization of searches of information and data within the phone for which [the affiant]'s certification d[id] not adequately establish probable cause." Ibid. Taking into consideration "the complexity" of cell phones and "law enforcement's ability to cull through" the data, the court instructed that "any future search warrant application should address such issues to allow the court to determine the

15

locations within the data and information on the cellular phone there is probable cause to believe relevant information concerning the crimes charged may be found." Id. at 323.

Here, as an initial matter and as observed by the State, defendant challenged the warrant only by way of his request for a Franks hearing. He did not challenge the warrant for lack of particularity. In so proceeding, the motion court was deprived the opportunity to address defendant's challenge on appeal. He has thus waived the issue. Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390 (App. Div. 2021), aff'd as modified, 252 N.J. 265, 284 (2022). Nonetheless, for purposes of completeness, we address the substance of defendant's argument.

This court has explicitly held a warrant that "allows a search without limitation of all the phone's contents . . . and data . . . satisfies the mandat[e] that [a] warrant specifically describe the search location so that an officer can reasonably ascertain and identify the place intended to be searched." Missak, 476 N.J. Super. at 322 (citations omitted) (internal quotation marks omitted). Here, the warrant specified its application to defendant's "black ZTE smart cellular phone, labeled as evidence under case #20-868," and authorized the search of "any and all data and information, electronic or otherwise, stored on

16

or within the above referenced cell phone."  While expansive, the application in support and the warrant itself limit with particularity those nine data points subject to search, as specified in Detective Sheehan's affidavit.

We recognize that the scope of this warrant and the technological advances that facilitated its execution implicate concerns about unnecessary intrusion of defendant's privacy rights.  Those privacy concerns obligate us "to ensure that [technological advances] do[] not erode Fourth Amendment protections."  Missak, 476 N.J. Super at 316 (quoting Carpenter v. United States, 585 U.S. 296, 320 (2018)).  We note, however, that those concerns are attenuated by defendant's status as a parolee.

Parolees' Fourth Amendment Rights

A parolee is not entitled to the full rights and liberties of an ordinary citizen.  Instead, parolees have "conditional liberty properly dependent on observance of special parole restrictions."  Morrissey v. Brewer, 408 U.S. 471, 480 (1972).  Accordingly, "[c]onstitutional claims made by PSL offenders 'must be examined in the context of their distinctive status as sex offenders who have been released into the community after serving their custodial sentences, and who are now under the Parole Board's continued supervision through [community supervision for life] or PSL.'"  K.G. v. N.J. State Parole Bd., 458

17

N.J. Super. 1, 31 (App. Div. 2019) (quoting J.B. v. N. J. State Parole Bd., 433 N.J. Super. 327, 336 (App. Div. 2013)).

The United States Supreme Court has held that considering "supervision [of a parolee] is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large," reasonable suspicion is a justifiable "replacement of the standard of probable cause." Griffin v. Wisconsin, 483 U.S. 868, 875-76 (1987). Thus, warrantless searches conducted by a probation officer on reasonable grounds, pursuant to a state regulation or a court order, satisfy the demands of the Fourth Amendment. Id. at 872-83. In United States v. Knights, the U.S. Supreme Court clarified that the Fourth Amendment permits probation and parole officers, as well as police officers, who have reasonable suspicion to conduct warrantless searches of individuals on probation or parole. 534 U.S. 112, 117-18 (2001).

In New Jersey, a parole officer is not required to obtain a warrant to search a parolee's home; instead, the officer need only demonstrate "reasonable suspicion" that evidence of a probation violation will be found there. N.J.A.C. 10A:72-6.3(a)(1). "'Reasonable suspicion' means a belief that an action is necessary based upon specific and articulable facts that, taken together with rational inferences from those facts, reasonably support a conclusion such as

18

that a condition of parole has been or is being violated by a parolee." N.J.A.C. 10A:72-1.1.

"The Fourth Amendment's touchstone is reasonableness, and a search's reasonableness is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate governmental interests." Knights, 534 U.S. at 112-13. "The balance of these considerations requires no more than reasonable suspicion to conduct a search . . . ." Id. at 121. Defendant's status as a parolee weighs against an expectation of privacy on the one hand and in favor of legitimate government interests on the other. Put another way, a parolee's reasonable expectation of privacy is definitionally reduced, and the State has a concomitant legitimate government interest in apprehending parole violators and protecting their potential victims. In this case, the government's legitimate interest was heightened by the immediate need to protect a minor, defendant's daughter, who the State had grounds to believe was in danger of being sexually assaulted by defendant. The reasonableness of the warrant at issue was properly informed and validated by these considerations.

In sum, the judge's finding of probable cause in support of a warrant for a search of the smartphone as it pertained to CSAEM was adequately supported

to search the entire contents of the smartphone for a full range of data. Defendant's status as a parolee, combined with his text messages with Reeves soliciting CSAEM, and Paone's statements, constituted probable cause to search defendant's smartphone for evidence of additional CSAEM.

Whether the Same Judge was Suitable to Decide Both Applications

For the first time on appeal, defendant contends that because the motion judge originally found probable cause for issuance of the warrant, his neutrality in deciding the motion to suppress was inherently compromised. The judge therefore should have recused himself from adjudicating the motion to suppress.

As authority for this argument, defendant cites Rule 7:5-2(b). That Rule, which governs the procedure municipal courts employ to adjudicate motions to suppress evidence, reads in pertinent part:

> If the search was made with a warrant, a brief stating the facts and arguments in support of the motion shall be submitted with the notice of motion.
>
> . . . .
>
> If the municipal court having jurisdiction over the motion to suppress evidence seized with a warrant has more than one municipal court judge, the motion shall be heard by a judge other than the judge who issued the warrant, such judge to be designated by the chief judge for that municipal court. If the municipal court having jurisdiction of the motion to suppress evidence seized with a warrant has only one judge, who issued the

warrant, the motion to suppress evidence shall be heard by the Municipal Court Presiding Judge for the vicinage, or such municipal court judge in the vicinage that the Assignment Judge shall designate.

Although defendant concedes "there is no corresponding rule for the Superior Court," he urges this court to adopt a like procedure. We decline to do so. This issue has long been settled by this court. Generally, a Superior Court judge who has approved a search warrant may rule on a defendant's motion to suppress evidence obtained through the warrant. See, e.g., State v. Smith, 113 N.J. Super. 120, 137-38 (App. Div.), certif. denied, 59 N.J. 293 (1971). In Smith, defendant maintained that a judge who issued a search warrant should be disqualified from hearing the motion to suppress, considering the judge "has given his opinion upon a matter in question in the action." Id. at 137 (quoting R. 1:12-1(d)). The Smith court clarified that the Rule does not "prevent a judge from sitting because he has . . . given his opinion on any question in controversy in the pending action in the course of previous proceedings therein." Ibid. (citing R. 1:12-1(g)). Accordingly, our Rules of Court permit a Superior Court judge to hear a suppression motion regarding a search warrant s/he signed. Ibid.

Beyond the absence of legal authority in support of defendant's position, were we nonetheless to adopt it, the proposed rule of disqualification would prove extremely impractical. Motion practice is voluminous in Superior Court.

21

Judges who rule on motions at the inception of a given case often preside over applications made at later phases. It is neither practical nor necessary for substitutions to made in the manner conducted at the municipal court level.

Finally, we note parenthetically that the motion judge here was exceptionally impartial in his thoughtful adjudication of defendant's <u>Franks</u> motion. In denying the application, he emphasized that had defendant presented evidence that Paone's statements were coerced or not credible, he would have concluded there was "deliberate falsehood" or reckless disregard by law enforcement. The judge also demonstrated fair-mindedness and flexibility when taking defendant's concerns into account when accepting the factual basis for his guilty pleas, and in ensuring that defendant knowingly and voluntarily accepted the terms of the plea agreement.

<u>Sentencing</u>

On appeal, a trial court's "sentencing determinations are entitled to substantial deference." <u>State v. Jaffe</u>, 220 N.J. 114, 124-25 (2014) (quoting <u>State v. Pagan</u>, 378 N.J. Super. 549, 558 (App. Div. 2005)). "Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" <u>State v. Bolvito</u>, 217 N.J. 221, 228 (2014) (quoting <u>State v. Whitaker</u>, 79 N.J. 503, 512 (1979)).

Defendant contended before the sentencing judge and now on appeal that his difficult childhood, substance use, and mental health issues, militated in favor of finding mitigating factor four, N.J.S.A. 2C:44-1b(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense."). Defendant maintains the sentencing judge failed to consider mitigating factor four and requests that this court remand for resentencing.

In reviewing a trial court's sentencing determinations, this court's review is limited to considering:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

"With respect to the consideration of aggravating and mitigating circumstances, 'the [sentencing] court must describe the balancing process leading to the sentence.'" State v. Canfield, 470 N.J. Super. 234, 344 (App. Div. 2019) (quoting State v. Kruse, 105 N.J. 354, 360 (1987)). "To provide an

intelligible record for review, the trial court should identify the aggravating and mitigating factors, describe the balance of those factors, and explain how it determined defendant's sentence." Kruse, 105 N.J. at 360.

Our review of the record reflects the sentencing judge took into account defendant's Avenel and presentence reports, noting that defendant had a history of substance abuse. In this case, the court considered the statutory mitigating factors and determined, "there are zero mitigating factors that would be noted here today that I could find. I went through each one of them individually as I came to the determination here."

Although the court did not make explicit findings as to each mitigating factor raised, it assessed defendant's history of substance use and circumstances of the offenses. Specifically, the court determined that defendant's substance use did not serve to mitigate his punishment. Rather, it was a "catalyst" for his already-existing "affinity" for pornography. The court noted that defendant's prior conviction for engaging in sexual activities with a minor evidenced he was aware his present actions were illegal, yet he failed to refrain.

Our jurisprudence provides, "[e]ven when, as here, the commission of the offense may be related to the offender's [substance use issues], the Code does not condone leniency." State v. Rivera, 124 N.J. 122, 126 (1991) (citing State v.

24

Jarbath, 114 N.J. 394, 407 (1989)). Particularly, drug dependency is not considered "substantial grounds tending to excuse or justify [one's] conduct." State v. Ghertler, 114 N.J. 383, 390 (1989) (quoting N.J.S.A. 2C:44-1(b)(4)). Beyond this, substance use in itself does not justify leniency. See ibid.; Rivera, 124 N.J. 126. Accordingly, the sentencing judge's determination that defendant's substance does not warrant a finding for mitigating factor four is supported by law.

As the State correctly observes, defendant did not explain at the sentencing hearing how his past sexual traumas and behavioral disorders would have legally justified his possession of CSAEM or endangerment of his daughter. Nor was legal justification established in the Avenel report. Stated otherwise, defendant's mental conditions did not compel his commission of the underlying offenses and therefore do not serve to legally justify or mitigate his conduct. See State v. Hess, 207 N.J. 123, 149 (2011); State v. Nataluk, 316 N.J. Super. 336, 349 (1998). Thus, in their totality, the sentencing judge's determinations were supported by competent evidence in the record. Bolvito, 217 N.J. at 228.

In sum, we affirm the trial court's decision denying defendant's motion for suppression of evidence extracted from the smartphone. The court did not err

A-0625-23

in deciding the suppression motion of evidence garnered from a warrant it approved. Defendant's sentence was properly imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

26

A-0625-23